IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

PAVARINI CONSTRUCTION CO. (SE), Inc., a Delaware
Corporation, individually, and for the use and benefit of
STEADFAST INSURANCE COMPANY,
a Delaware Corporation,

    Plaintiff,

v.

ACE American Insurance Company, a
Pennsylvania Corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Pavarini Construction Co. (SE), Inc., individually, and as assignee of and for the use and benefit of Steadfast Insurance Company (collectively "Pavarini"), by and through its undersigned counsel, hereby sues Defendant, ACE American Insurance Company ("ACE") and alleges as follows:

### Parties and Jurisdiction

1. This is an action for declaratory judgment and breach of contract seeking an adjudication of the rights, duties and obligations of Plaintiff Pavarini and Defendant ACE under a general liability policy covering a Condominium project in Miami, Florida.

2. Plaintiff Pavarini Construction Co. (SE), Inc. is a Delaware corporation with its principal place of business in Hialeah, Florida.

3. Upon information and belief, Defendant ACE, an insurance company, is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

4.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332, in that it involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (c), because the Defendant conducts business in this District, and a substantial part of the events giving rise to this claim occurred in this District.

## Background

6.   Pavarini was the general contractor for a 63 story luxury condominium tower located at 900 Biscayne Boulevard in downtown Miami, Florida (the "Condominium" or "Project"). The developer of the Project was 900 Biscayne Bay, LLC, an affiliate of Terra-ADI International Bayshore, LLC ("900 Biscayne").

7.   900 Biscayne obtained Commercial General Liability ("CGL") insurance to cover the construction of the Project, as well as the completed work, as part of an Owner Controlled Insurance Program ("OCIP"). The OCIP policies insure, among others, 900 Biscayne, and contractors and subcontractors involved in the Project, including Pavarini and its subcontractors.

8.   American Home Assurance Company ("American Home") provided policy number GL 178-84-86, the primary layer of CGL coverage under the OCIP, with completed operations limits of $2 million per occurrence/$4 million aggregate, and a five year products-completed operations extension. ACE issued policy number XLX G21974845, a first layer umbrella policy, with limits of $25 million, and a five year completed operations extension. A copy of the ACE umbrella policy is attached as **Exhibit A** (the "ACE Policy"). American Home and ACE will be collectively referred to herein as the "Insurers," and the policies will be collectively referred to herein as the "Policies."

9. Steadfast Insurance Company ("Steadfast") is a Delaware corporation, with a principal place of business at 1400 American Lane, Schaumburg, Illinois 60196. Steadfast issued to Pavarini policy number SGD 9306239-03, a subcontractor default policy, commonly known as Subguard ("Subguard"). Subguard has similarities to and is often procured in lieu of individual subcontractor performance bonds to protect the general contractor from subcontractor defaults. For certain subcontractors on the Project, Pavarini purchased Subguard in lieu of requiring the subcontractor to provide payment and performance bonds. Subguard does not insure or otherwise protect the enrolled subcontractors; it only protects Pavarini. When Steadfast makes a payment under Subguard, it becomes subrogated to the rights and remedies of Pavarini, both contractually and equitably.

10. Construction of the 900 Biscayne Bay Condominium commenced in 2005. The first Temporary Certificate of Occupancy was issued on April 18, 2008, and the record date of Substantial Completion was May 22, 2008.

11. Turnover of the Project from 900 Biscayne to the 900 Biscayne Bay Condominium Association occurred on April 2, 2012.

12. In the fall of 2009, 900 Biscayne gave notice to Pavarini of damages to stucco and paint at the Project. Among other things, 900 Biscayne complained of cracks/spalling and delamination/de-bonding of the exterior stucco of portions of the façade of the Project above the 17th floor pool deck. Stucco began to fall off the side of the building. Pavarini undertook emergency procedures to protect building occupants. In addition, 900 Biscayne alleged that stucco cracking within the rooftop penthouse enclosure allowed water to penetrate, causing damage to the roof and penthouse units.

13.   On December 10, 2010, 900 Biscayne submitted a written demand to Pavarini under Chapter 558, Fla. Statutes to repair damages to the Condominium.  900 Biscayne submitted a second and more detailed § 558 notice on September 27, 2011.

14.   900 Biscayne and Pavarini separately gave notice to the OCIP carriers of this damage in November 2009 and January 2010 respectively.  Pavarini also tendered the Section 558 notices to each of the Insurers, demanding a defense and indemnification. Pavarini has provided ACE with continuous access to the site, written and verbal reports and other information on an on-going basis since its first notice.

15.   American Home, as the primary carrier in the OCIP, initially accepted Pavarini's tender, and defended Pavarini against 900 Biscayne's Section 558 claims.

16.   Pavarini engaged engineers to determine the cause of the problems alleged. Ultimately, it was determined that deficiencies in the concrete masonry unit (CMU) walls, particularly with respect to reinforcing steel in the CMU walls, combined with the improper location of reinforcing steel in the building's concrete columns and beams, resulted in excessive movement of the building and other problems.  This in turn was causing stucco cracking and delamination, as well as micro-cracking in the concrete of columns, beams and shear walls.  The subcontractor responsible for the CMU walls, and the separate subcontractor responsible for reinforcing steel fabrication and placement in columns, shear walls, and beams, were distinct from the subcontractors responsible for installing concrete, stucco, paint and other damaged building components.

17.   A multi-stage remediation effort was designed to undertake needed repairs at the Project.  Initially, hurricane netting had been installed to prevent falling debris from causing injuries to the public.  The permanent repair involves, among other things, the construction of a

metal curtain wall system which is designed to both address much of the existing physical damage to the building, and to mitigate against further damage. The selected design allows for the repair of the building without the need to vacate it.

18. Pavarini repeatedly advised ACE of the need to proceed with repairs expeditiously and of its remediation plans. ACE consented to Pavarini proceeding with repairs to mitigate against further physical damage to the building, and to resolve, at least partially, third-party claims arising from property damage to the building, without prejudice to Pavarini's coverage under the OCIP policies. Pavarini relied upon ACE's consent in proceeding with repairs. Remedial work commenced in 2011. The work is expected to be completed during 2014.

19. American Home reimbursed Pavarini for costs incurred in connection with the installation of the hurricane netting. As of late 2011, however, the Insurers had consented to repairs proceeding, but had not agreed to participate in funding the remainder of the needed repairs. Pavarini did not have the resources to proceed with repairs on its own.

20. Pavarini's CMU subcontractor on the Project, and the subcontractor responsible for the placement of rebar, were enrolled subcontractors under Pavarini's Subguard Policy.

21. In 2011, Pavarini declared the CMU subcontractor in "default" of its subcontract obligations.

22. After an investigation, and in order to mitigate damages and prevent further loss, Steadfast and Pavarini entered into an agreement providing, in part, that if the Insurers failed to timely honor their obligations to pay for repairs, Steadfast would participate in funding the repairs under Subguard, subject to a reservation of rights, and subject to Pavarini's agreement to pursue the Insurers for coverage due under the Insurers Policies. Pavarini contends that the

5

Insurers were and are liable in the first instance for many of the damages Steadfast has and will reimburse, and has preserved the right to pursue recoveries from the Insurers.

23. Steadfast has reimbursed, and continues to reimburse Pavarini for certain damages covered by Subguard on the Project. To the extent of its payments, Steadfast is subrogated to the rights and stands in the shoes of Pavarini, including Pavarini's rights against responsible subcontractors and insurers. Steadfast subsequently assigned its rights to recover amounts it paid under Subguard, including its subrogation rights to Pavarini. Pavarini is pursuing in this action both its own rights, and Steadfast's assigned subrogation rights.

24. Pavarini has agreed to reimburse Steadfast, in certain circumstances, for payments it has made under Subguard for damages at the Project.

25. Pavarini, as the general contractor on the Project, faced liability for damages because of "property damage" caused by deficiencies in the work of subcontractors. All of the damaged work at issue in this action, and all of the work out of which the damage arises, was performed by subcontractors. As such, those damages are covered by the OCIP Policies, including the ACE Policy.

26. During 2012 and 2013, American Home made additional contributions to the cost of repairs. American Home has now paid $2 million of indemnity in connection with the claim at issue in this action.

27. American Home had previously paid a full $2 million occurrence limit for a separate and unrelated completed operation claim arising from the Project. As a consequence, American Home's completed operations aggregate limit is exhausted, and ACE's policy is triggered.

28. ACE assumed Pavarini's defense in early 2013, after the exhaustion of American Homes' primary limits, but has not paid for any of the repairs or otherwise participated in resolving the claims at issue.

29. Pavarini's repair effort is continuing. Pavarini estimates that by the end of the repair program, the total cost of the repairs will exceed $23 million.

30. American Home exhausted its primary policy limits for covered property damage claims at the Project, triggering ACE's coverage obligations for damages in excess of the American Home limit up to the ACE Policy limit of $25 million.

31. Despite the exhaustion of the American Home policy limits, ACE has failed to participate in the funding of the repairs or otherwise resolving the claims at issue, and has breached its obligations to Pavarini.

32. Pavarini has suffered damages by reason of ACE's failure to satisfy its obligation, including, but not limited to:

    i. Amounts paid to investigate the claims;

    ii. Amounts paid to contractors and consultants for the repair of Property Damages;

    iii. Costs incurred to oversee and manage the repair; and

    iv. Costs and expenses incurred to pursue this action.

## COUNT I
## DECLARATORY JUDGMENT

33. Pavarini repeats and realleges each and every allegation above as if fully set forth herein.

34. Upon information and belief, ACE disputes one or more of the allegations herein, including, without limitation, the assertions of Pavarini that the ACE Policy covers the damages outlined above.

7

35. By reason of the foregoing, an actual and justiciable controversy exists between Pavarini and ACE regarding their respective rights and obligations under the Policies, including, but not limited to, ACE's obligation to indemnify Pavarini as an insured in connection with the claims and damages described herein.

36. An Order from this Court will resolve these disputes concerning the parties respective rights and obligations.

37. Pavarini is entitled to a declaratory judgment, *inter alia*, that:

(i) American Home exhausted its products-completed operations aggregate limit with respect to the Project, thereby triggering ACE's duty to defend and indemnify;

(ii) ACE is obligated to reimburse all defense costs incurred by Pavarini after the American Home policies were exhausted;

(iii) ACE is obligated to indemnify Pavarini for damages incurred because of property damage to and involving the Project, as described above and as will be more fully set forth at trial;

(iv) No exclusions bar recovery of the damages incurred by Pavarini as an insured, or the damages incurred by Steadfast, as subrogee of Pavarini, to the extent of payments made by Steadfast;

(v) No exclusions bar recovery of the damages requested by Pavarini as assignee of Steadfast to the extent of payments made by Steadfast;

(vi) Pavarini is entitled to recover from ACE all fees and costs incurred pursuing this action, under Florida statutes and otherwise, together with pre-judgment interest and other relief.

WHEREFORE, Pavarini requests entry of a declaratory judgment against ACE as outlined above, plus fees, costs, pre-judgment interest, and all other relief this Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT AGAINST ACE BY PAVARINI, INDIVIDUALLY

38. Pavarini repeats and realleges each and every allegation above as if fully set forth herein.

39. The ACE Policy is a valid and binding agreement. Pavarini is an insured under the ACE Policy.

40. The Project developer served statutory notices on and made claims against Pavarini for property damage, including physical injury to tangible property and loss of use of property, arising out of the work of subcontractors at the Project.

41. With the consent of ACE, Pavarini incurred and is continuing to incur significant costs to investigate and resolve third-party claims, to repair property damage at the Project, and to mitigate against further damages.

42. Pavarini has incurred and continues to incur damages because of "property damage." All of the damaged work, and all of the work out of which the damage at issue arises, was performed by subcontractors.

43. ACE has an obligation, *inter alia*, to indemnify Pavarini for covered damages that exceed the limits of the underlying American Home Policy up to the limits of the ACE Policy.

44. American Home has paid Pavarini the full aggregate limit available under its primary layer of coverage in the OCIP, which payment exhausts the primary layer of coverage and triggers ACE's payment obligations.

45. ACE is obligated to defend and indemnify Pavarini, but has breached the obligation to indemnify.

46. The repair of property damage at the Project is not yet complete. The covered damages incurred by Pavarini to date exceed the limits of the American Home primary layer of coverage, and additional covered damages are still being incurred.

47. Pavarini has satisfied all of its obligations under the Policies, or they have been waived or are the subject of estoppel, including the payment of premiums and provision of timely notice of claims.

48. ACE has refused to honor its coverage obligations, and breached the Policy.

49. As a direct, proximate and foreseeable result of ACE's refusal to fulfill its indemnity obligations to Pavarini, and other breaches, Pavarini has incurred, and will continue to incur substantial costs, expenses and other damages, as more fully set forth above.

50. As a result of the aforementioned breaches, ACE is liable to Pavarini for money damages as an insured under the ACE Policy.

WHEREFORE, Pavarini demands judgment against ACE, in an amount to be proven at trial, but believed to be in excess of $20 million, plus fees, costs, pre-judgment interest, and all other relief this Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT AGAINST ACE BY PAVARINI, AS ASSIGNEE AND FOR USE AND BENEFIT OF STEADFAST, AS SUBROGEE

51. Pavarini repeats and realleges each and every allegation above as if fully set forth herein.

52.     The ACE Policy is a valid and binding agreement.  Pavarini is an insured under the ACE Policy.

53.     The Project developer served statutory notices on and made claims against Pavarini for property damage, including physical injury to tangible property and loss of use of property, arising out of the work of subcontractors at the Project.

54.     With the consent of ACE, Pavarini incurred and is continuing to incur significant costs to investigate and resolve the claims, to repair property damage at the Project, and to mitigate against further damages.

55.     Pavarini has incurred and continues to incur damages because of "property damage."  All of the damaged work, and all of the work out of which the damage at issues arises, was performed by subcontractors.

56.     ACE has an obligation, *inter alia*, to indemnify Pavarini for damages that exceed the limits of the underlying American Home Policy up to the limits of the ACE Policy.

57.     American Home has paid Pavarini the full aggregate limit available under its primary layer of coverage in the OCIP, which payment exhausts the primary layer of coverage for these claims and triggers ACE's payment obligations.

58.     ACE is obligated to defend and indemnify Pavarini, but has breached that obligation to indemnify.

59.     The repair of property damage at the Project is not yet complete.  The covered damages incurred by Pavarini to date exceed the limits of the American Home primary layer of coverage, and additional covered damages are still being incurred.

60. Pavarini has satisfied all of its obligations under the Policies, or they have been waived or are the subject of estoppel, including the payment of premiums and provision of timely notice of claims.

61. ACE has refused to honor its coverage obligations, and breached its policy.

62. As a direct, proximate and foreseeable result of ACE's refusal to fulfill its indemnity obligations to Pavarini, and other breaches, Pavarini has incurred, and will continue to incur substantial costs, expenses and other damages, as more fully set forth above.

63. Pursuant to Subguard, Steadfast has reimbursed and continues to reimburse certain costs incurred by Pavarini arising from the default of enrolled subcontractors. The Steadfast Subguard Policy is a valid contract.

64. Most or all of the damages reimbursed by Steadfast with respect to the claims at issue here are covered by the OCIP Policies. The OCIP Insurers were and are primarily liable for costs reimbursed by Steadfast, and should have paid those costs in the first instance.

65. Steadfast is subrogated to the rights of, and stands in the shoes of Pavarini to the extent of those payments, including rights of recovery against ACE and against subcontractors.

66. Steadfast is entitled to recover from ACE those damages which ACE was required to pay under its Policy, but that Steadfast paid.

67. Steadfast assigned its subrogation rights back to Pavarini. Pavarini is proceeding here in its own right and for the use and benefit of Steadfast.

68. As a result of the aforementioned breaches, ACE is liable to Pavarini, as assignee of Steadfast, for money damages under the ACE Policy.

WHEREFORE, Pavarini, for itself, and for the use and benefit of Steadfast, demands judgment against ACE for an amount to be proven at trial, but believed to be in excess of $20 million, plus fees, costs, pre-judgment interest, and all other relief this Court deems just and proper.

Dated:  February 12, 2014                                     Respectfully submitted,

                                                                s/Peter F. Valori
                                                                Peter F. Valori, LLC
Florida Bar No. 043516
Russell Landy
Florida Bar No. 0044417
DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

— and —

David T. Dekker
Melissa C. Lesmes
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, NW
Washington, DC  20037-1122
(202) 663-8000
david.dekker@pillsburylaw.com
melissa.lesmes@pillsburylaw.com
***(Upon pro hac vice admission)***

*Attorneys for Plaintiff*